# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| DALE MECHERLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Joan B. Gottschall |
| | ) | |
| TRUGREEN, INC., A Delaware | ) | No. 12 C 1617 |
| Corporation, TRUGREEN COMPANIES, | ) | |
| LLC, A Delaware Corporation, and THE | ) | |
| SERVICEMASTER COMPANY, A | ) | |
| Delaware Corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION & ORDER

Plaintiff Dale Mecherle sued Defendants Trugreen, Inc., Trugreen Companies, LLC, and The Servicemaster Company (collectively "Defendants") for violations of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12117, and for retaliatory discharge under Illinois law, based on Defendants' alleged failure to accommodate his disability and termination of his employment. Now before the court is Defendants' Motion to Compel Arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, and Federal Rule of Civil Procedure 12(b)(6). Defendants argue that Mecherle is a party to a dispute resolution program that requires him to arbitrate his claims. The court agrees and grants Defendants' Motion to Compel Arbitration.

### I. BACKGROUND

**A. Mecherle's Allegations**

Mecherle was employed by TruGreen Limited Partnership ("TruGreen"), a subsidiary of The ServiceMaster Company ("ServiceMaster"), beginning in

approximately 1989. According to the Complaint, Mecherle began working as a service manager for Defendants in approximately 2005. In 2007 and 2010, as a result of work related injuries, Mecherle had surgery on his shoulders. This limited his ability to lift, perform manual tasks, push and pull, and do repetitive overhead work. According to Mecherle, however, he was able to perform the essential functions of his job.

Prior to 2010, Mecherle was allowed to continue to work despite his limitations. Mecherle alleges that, after a medical leave in June 2010, he was released by his physician to perform his managerial duties, but Defendants refused to allow him to return to work. In January 2011, after Mecherle's second shoulder surgery, Defendants again refused to allow him to return to work or to consider any accommodations for him.

In or about February 2011, Defendants told Mecherle that his service manager position had been filled and that there were no open manager positions, but that he could apply for a position if one became available in the future. Mecherle alleges that he subsequently applied for open manager positions, but Defendants told him there were no open positions—despite posted vacancies—or told him that he could not perform the jobs for which he applied. Defendants formally terminated Mecherle's employment on March 5, 2012. Mecherle alleges that Defendants accommodated other managers who had physical and weight-lifting restrictions similar to or more restrictive than Mecherle's, and that Defendants' refusal to accommodate him violated the ADA. Mecherle further alleges that Defendants terminated him, in violation of Illinois common law, in retaliation for incurring a work-related injury and for filing a claim under the Worker's Compensation Act for his work-related injury.

**B. The "We Listen" Program**

Defendants argue that, effective January 1, 2009, ServiceMaster implemented an alternative dispute resolution program known as "We Listen" to be utilized by its subsidiaries, including Mecherle's employer, TruGreen. Under the program, employees agreed as a term and condition of their employment to use the program to address any employment-related complaints, including discrimination on the basis of disability, retaliation, and wrongful discharge. The program entails an internal dispute resolution procedure, followed, if necessary, by arbitration.

Defendants contend that Mecherle was made aware of the "We Listen" program and voluntarily agreed to submit his employment-related disputes to arbitration. Defendants submit as evidence of the fact that Mecherle was on notice of the program the declaration of Roy Cohen, ServiceMaster's Vice President of Human Resources. Cohen states that Mecherle was given access to and a copy of the "We Listen" program on or about December 15, 2008. (Defs.' Mem. in Supp. of Mot. to Compel Ex. 1 (Cohen Decl.) ¶ 10, ECF No. 15; Ex. 1-B ("We Listen" Program).) The packet of "We Listen" materials dated December 15, 2008, submitted as an exhibit to Cohen's declaration, states that the plan covers all "associates" employed by ServiceMaster. ("We Listen" Program 7.) It further states that employees "are automatically required to use th[e] program if after January 1, 2009," they continue their employment with ServiceMaster. (*Id.*) A section of the packet entitled "Questions and Answers" states:

> After January 1, 2009, all ServiceMaster associates . . . in the United States are required to use the *We Listen* program: administrative support staff, professionals, technicians, laborers, sales associates, managers and senior executives. In addition, all ServiceMaster associates who leave ServiceMaster employment after January 1, 2009, are required to use *We Listen* to resolve ServiceMaster employment-related issues.

(*Id.* at 13.)  According to Defendants, on October 27, 2009, Mecherle completed an online training course on the "We Listen" program, as evidenced by a copy of his training log, which indicates that the "We Listen" training module was accessed and completed on that date.  (*Id.* at ¶ 11; Ex. 1-D (Training Log).)

Defendants further claim that in 2010, Mecherle received a copy of the TruGreen Associate Handbook, dated January 1, 2010, which referenced the "We Listen" program and informed employees that the complete program was available for online review.  (Defs.' Mem. in Supp. of Mot. to Compel Ex. 1-E (Handbook).)  On February 22, 2010, Mecherle electronically signed and acknowledged receiving the Handbook.  By clicking a box, Mecherle indicated that he "agree[d] with the conditions specified" in the Handbook, including the requirement that he utilize the "We Listen" program "to resolve any and all work-related disputes/concerns and to arbitrate such disputes if they are not resolved."  (Defs.' Mem. in Supp. of Mot. to Compel Ex. 1-F (Handbook Acknowledgement Form).)  A revised version of the "We Listen" program was mailed to Mecherle's home on December 14, 2011.  (Cohen Decl. ¶ 14; Defs.' Mem. in Supp. of Mot. to Compel Ex. 1-C (2012 Revision).)

In response, Mecherle states in an affidavit that in or about October 2009, he "was told that as a manager," he was to undergo online training on the "We Listen" program, but that "[t]o the best of [his] memory, [he] did not receive any information at that time about having to resolve any complaints . . . through any arbitration process."  (Pl.'s Resp. to Defs.' Mot. to Compel Ex. 1 (Mecherle Aff.) ¶ 2, ECF No. 18-1.)  He further states that he "was not told in either 2010 or 2011 that [he] would have to file an arbitration complaint in order to be able to return to work."  (*Id.* at ¶ 6.)

## II. LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), "private agreements to arbitrate are enforced according to their terms," *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 53-54 (1995), and an arbitration clause in "a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Federal courts apply state contract law to determine whether an arbitration agreement is valid, enforceable, and applicable to a dispute. *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809 (7th Cir. 2011); *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012). Arbitration agreements are treated like other contracts under Illinois law, meaning there must be an "offer, acceptance and consideration." *Vassilkovska v. Woodfield Nissan, Inc.*, 830 N.E.2d 619, 623-24 (Ill. 2005).

The FAA does not specify the evidentiary standard a party seeking to avoid compelled arbitration must meet. But courts have analogized the standard to that required of a party opposing summary judgment under Federal Rule of Civil Procedure 56(e). The party opposing arbitration bears the burden of establishing why the arbitration provision should not be enforced, *Green Tree Fin. Corp. Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000), and "must identify a triable issue of fact concerning the existence of the agreement in order to obtain a trial on the merits of the contract." *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). As with a motion for summary judgment, the court accepts "the evidence of the non-movant" and draws "all justifiable inferences . . . in his favor." *Id*. (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

**III. ANALYSIS**

Mecherle does not argue that arbitration agreements such as the "We Listen" program are unenforceable, or that his claims of discrimination and retaliation are not covered by the program, but rather that the program does not apply to him because he did not have notice of it or agree to be bound by it. Alternatively, he argues that the arbitration agreement is not an enforceable contract under Illinois law because no consideration was provided in exchange for his agreement to submit claims to arbitration.

**A. Notice of the Agreement**

Mecherle first argues that he was not bound by and did not agree to the arbitration agreement set out in the "We Listen" program. He claims that Defendants have not produced evidence that he had access to any materials about the "We Listen" program in 2008. He further claims that the training that he was provided regarding the program in October 2009 "only related to his role as a manager and how, as a manager, he was to 'listen' to complaints from associates;" it did not inform him that he was himself bound by an arbitration provision. Finally, Mecherle argues that the program in effect beginning in 2008 applied only to "associates," not to managers like himself. (Pl.'s Resp. to Mot. to Compel 2, ECF No. 18.)

Mecherle has failed to "identify a triable issue of fact concerning" whether he had notice of the "We Listen" program in 2008 or 2009. *See Tinder*, 305 F.3d at 735. Defendants have offered evidence, in the form of Cohen's declaration and its supporting exhibits, that Mecherle was provided with a packet of information about the "We Listen" program on or about December 15, 2008. Mecherle has not presented evidence, by affidavit or otherwise, that suggests that he did not receive materials about the program.

His affidavit does not mention the December 15, 2008, information packet at all. Rather, he argues that Cohen's affidavit is insufficient evidence to establish that Mecherle had access to the packet, because Cohen's employment at Service Master did not begin until January 2009. The court, however, finds the affidavit sufficient to establish that program materials were provided to ServiceMaster employees. As Vice-President of Human Resources, Cohen was in a position to confirm that the materials had been provided by his department to employees shortly before his tenure with ServiceMaster began.

Furthermore, although Mecherle claims that "[t]o the best of [his] memory, [he] did not receive any information at that time about having to resolve any complaints . . . through any arbitration process" (Mecherle Aff. ¶ 2.), the evidence clearly shows that Mecherle did have access to this information. Mecherle concedes that he was required to undergo training on the program in 2009, and Defendants produced evidence that he completed the "We Listen" training module on October 27, 2009. In *Tinder*, the Seventh Circuit held that a plaintiff's affidavit stating that she did "not remember receiving or seeing [a] brochure" about an arbitration program was insufficient to raise a genuine issue of fact when the defendants presented evidence that the brochure was included with her paycheck. 305 F.3d at 735-36. Similarly, here Mecherle's affidavit claiming lack of knowledge of the program is insufficient to create a dispute as to whether he had access to the program materials in 2008 and 2009, when Defendants' evidence shows that he did have access to the information packet and the online training program.

As to Mecherle's argument that the program did not cover managers, the court finds that Defendants have produced undisputed evidence that the definition of a ServiceMaster "associate" encompassed "managers." This was clearly explained in the

information packet provided to employees on December 15, 2008. Mecherle may be bound by an arbitration agreement regardless of whether he actually read the materials with which he was provided, including the "Questions and Answers" section, which explained that, as a service manager, he was considered a ServiceMaster "associate" for purposes of the "We Listen" program. *See, e.g.*, *Paper Express, Ltd. v. Pfankuch Maschinen GmbH*¸ 972 F.2d 753, 757 (7th Cir. 1992) ("[A] party who agrees to terms . . . without understanding or investigating those terms does so at his own peril."); *see also Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1148 (7th Cir. 1997) ("A contract need not be read to be effective; people who accept take the risk that the unread terms may in retrospect prove unwelcome."). In summary, the court concludes that Mecherle had notice of the arbitration program, and that as a manager, he was covered by it.

**B. Consideration**

Mecherle argues, in the alternative, that the arbitration agreement was invalid because it was not supported by consideration, as required by Illinois contract law. Under Illinois law, continued employment after notice of an arbitration program constitutes acceptance and consideration. *See, e.g.*, *Melena v. Anheuser-Busch, Inc.*, 847 N.E.2d 99, 109 (Ill. 2006). Mecherle claims, however, that he worked for TruGreen for only a few months after receiving notice of the "We Listen" program. Mecherle was on medical leave as of April 2010, and he was not allowed to return to work after he was released by his physician to perform his managerial duties.

The court disagrees that Mecherle's continued employment by TruGreen is inadequate consideration. Mecherle was on notice of the "We Listen" program as early as December 15, 2008, when he received materials about the program (and certainly as of

October 27, 2009, when the evidence shows that he completed a training program about the program). Thus, even if his employment had ended in April 2010, he was employed for at least fifteen months after receiving notice of the program. But Mecherle's employment was not officially terminated until March 5, 2012, over three years after he received notice of the program. Defendants have presented evidence that he continued to receive benefits from TruGreen, in the form of dental and disability coverage and basic life insurance, until that date. (*See* Defs.' Reply in Supp. of Mot. to Compel Attach. 2 (Curt Decl.), ECF No. 20.) Mecherle's continued employment and his receipt of these benefits constituted consideration for his agreement to be bound by the arbitration program. He has therefore failed to raise a disputed question of fact as to whether the arbitration agreement is unenforceable for lack of consideration.

## IV. CONCLUSION

As a valid arbitration agreement covered the dispute in question in this case, the court grants Defendants' Motion to Compel Arbitration. Section 3 of the FAA directs courts to stay proceedings that have been referred to arbitration until arbitration has been completed. 9 U.S.C. § 3; *see also Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 732 (7th Cir. 2005). The case is therefore stayed pending arbitration.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: September 14, 2012